Cite as 2019 Ark. App. 414

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CV-18-158

| | |
|---|---|
| AGRIFUND, LLC, AND HAMPTON PUGH COMPANY, LLC<br><br>APPELLANTS<br><br>V.<br><br>REGIONS BANK; HILL SEED & ELEVATOR, INC.; OPTIMUM AGRICULTURE, LLC; AND HUBBARD BRAKE, LLC<br><br>APPELLEES | **Opinion Delivered:** September 25, 2019<br><br>APPEAL FROM THE DESHA COUNTY CIRCUIT COURT [NO. 21CV-15-125]<br><br>HONORABLE ROBERT BYNUM GIBSON, JR., JUDGE<br><br>REMANDED TO SETTLE AND SUPPLEMENT THE RECORD AND FOR REBRIEFING |

**PHILLIP T. WHITEAKER, Judge**

The appellants, Agrifund, LLC (ARM),[1] and Hampton Pugh Co., LLC (Pugh),[2] appeal the judgment of the Desha County Circuit Court finding that the security interest of appellee Regions Bank in crops and crop proceeds had priority over their separate, respective security interests. ARM and Pugh also appeal the circuit court's ruling that appellee Optimum Agriculture, LLC, had a landlord's lien of approximately $79,000 in the

---

[1]Agrifund is the successor in interest to Ag Resource Management, LLC (ARM), and was substituted in place of ARM. Consistent with the parties, we will refer to the main appellant as ARM.

[2]Although Pugh filed a separate brief, it adopted ARM's abstract, addendum, and argument.

proceeds. We do not address the merits of these arguments because we must remand the case to settle and supplement the record and for rebriefing.

We provide the following summary of the procedural history to explain why remand and rebriefing are necessary. Scott Day operates and controls farming entities that utilize different operational names. In 2014, three of Day's entities—collectively "the Old Entities"—received a crop-production loan from Regions. In exchange for the loans, the Old Entities executed security agreements granting Regions security interests in their crops. Regions perfected its security interests by filing the appropriate UCC financing statements as to the Old Entities. At the end of the 2014 crop season, the Old Entities could not fully repay their loans to Regions.

In 2015, Day intended to farm utilizing the names of the Old Entities, subject to the ability of the Old Entities to obtain financing. The Old Entities sought a new crop-production loan from Regions, but Regions declined to finance the 2015 crop for the Old Entities. As a result, Day took other actions. He purchased the necessary seed and other inputs on credit from Pugh and Hill Seed and Elevator, Inc. (Hill), to get the 2015 crop planted. Day then sought financing through ARM for the 2015 crop in the names of the Old Entities. ARM would not loan monies to the Old Entities unless Regions entered into a subordination agreement with ARM, which Regions refused to do. Being unable to secure financing in the name of the Old Entities, Day then decided to farm the lands in the names of three new entities he had formed in late 2014 or early 2015—collectively "the New Entities." Evidently, ARM made a crop-production loan to the New Entities. ARM obtained security agreements from the New Entities in the 2015 crops and filed the

2

appropriate UCC financing statements as to both the New Entities and Day, individually. Pugh and Hill, who had also provided financing for the 2015 crop, likewise had security agreements and filed the appropriate UCC financing statements as to the New Entities.

By the end of the 2015 crop season, Day and his farming operations owed several entities but did not have enough assets to pay everyone, which became the catalyst for this litigation. Hill and Pugh were the first to file suit regarding who had priority to the 2015 crop proceeds. They sued Regions; ARM; the New Entities; Hubbard Brake, LLC; and Optimum.[3] ARM then filed a separate suit against the New Entities, their individual partners, Regions, Hill, and Pugh. Within these two separate suits, numerous counterclaims, cross-claims, and third-party complaints were filed. The circuit court later consolidated these two separate suits into the case originally filed by Hill and Pugh, and the proceeds from the 2015 crop—approximately $2.9 million—were deposited in the registry of the court.

After a two-day bench trial, the circuit court entered judgment finding that Regions' lien had priority over the liens of ARM, Hill, and Pugh. Optimum was found to have a landlord's lien in the proceeds. The proceeds were distributed $79,000 to Optimum, approximately $1.8 million to Regions, and the remaining funds were to be divided between ARM, Hill, and Pugh pursuant to a settlement among those parties, with ARM receiving 68 percent and Hill and Pugh dividing 32 percent. This appeal by ARM and Pugh followed.

---

[3]Hubbard Brake, LLC, and Optimum are landlords of farmland leased by the farming operations of Day.

We cannot reach the merit at this time, however. Our rules of procedure direct that if anything material to either party is omitted from the record, this court may direct that the record be settled and supplemented and that a supplemental record be certified and transmitted. Ark. R. App. P.−Civ. 6(e); *Boyd v. Crocker*, 2016 Ark. App. 382. Here, we have determined that the record filed with our court is incomplete. Specifically, we note that all pleadings filed in the suit initiated by ARM predating its consolidation with the suit filed by Hill and Pugh are not before us. For instance, we do not have ARM's original complaint, which appears to be the only pleading in which ARM seeks affirmative relief. In its answer to Regions' second third-party complaint, filed after the consolidation of the cases, ARM adopted and realleged the allegations contained in its original complaint. However, we cannot know what was adopted and realleged without the original pleading being in the record. We also do not have other postconsolidation pleadings in the addendum that respond to pleadings in the ARM case.[4]

Accordingly, we order the record to be settled and supplemented pursuant to Rule 6(e) with the pleadings filed in the case brought by ARM prior to the consolidation of the cases. In addition, we order supplementation of the addendum pursuant to Arkansas Supreme Court Rule 4-2(b)(4). ARM and Pugh have thirty calendar days to settle and supplement the record. ARM and Pugh shall then have fifteen days from the date the supplemental record is lodged to revise their briefs as necessary and to file a supplemental

---

[4]For example, we do not have answers to ARM's complaint from any party. We also do not have any counterclaims, cross-claims, and third-party complaints that were filed in the case initiated by ARM. These should be included. The record before us contains ARM's answer to a counterclaim and third-party claim of Hill and Pugh. However, the counterclaim and third-party claim are not in the record.

4

addendum. Regions and Optimum will then have fifteen days to revise their briefs if they so choose.

Remanded to settle and supplement the record and for rebriefing.

ABRAMSON and GLADWIN, JJ., agree.

*Waddell, Cole & Jones, PLLC*, by: *Ralph W. Waddell* and *Justin E. Parkey*, for separate appellant Agrifund, LLC.

*Gill Law Firm, PLC*, by: *Brooks A. Gill* and *Kelly K. Brown*, for separate appellant Hampton Pugh Company, LLC.

*Snellgrove, Langley, Culpepper, Williams & Mullally*, by: *J. Chad Owens* and *Todd Williams*, for separate appellee Regions Bank.

*Bridges, Young, Matthews & Drake PLC*, by: *John P. Talbot*, for separate appellee Optimum Agriculture, LLC.